**11-3474-cr**
***United States v. Roy Ageloff***

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

---

August Term, 2012

(Argued: September 14, 2012 Decided: October 10, 2012)

Docket No. 11-3474-cr

---

UNITED STATES OF AMERICA,

*Appellee*,

-v.-

ROBERT CATOGGIO, DONALD MESSINGER, BARRY MIELE, ALAN KOOP, MARCELO QUINTERO, MICHAEL TROCCHIO, DOMINICK FRONCILLO, STEPHEN AGNESE, ARTHUR ALONZO, JOHN ASARO, RANDY ASHENFARB, ROCCO BASILE, WILLIAM JOSEPH BATTISTA, MICHAEL A. BENGEN, JOHN BESARANY, NICHOLAS BOSCO, FABIO BORGOGNONE, NEIL BRAUNER, NICHOLAS BRIGANTI, RONALD CATAGGIO, ANTHONY CAVICCHIO, JOHN CLAUDINO, DAMON GERARD COHEN, WILLIAM COSIDENTE, RONALD CROPPER, JR., JOSEPH DIBELLA, DAVID DUNHAM, JONATHAN DURINDA, RUI REIS FIGUEIREDO, ROBERT FIGUEROA, VITO GILI, VALERY GOLDBERG, GREGORY GROELLER, THOMAS GUCCIARDO, JOHN LEMBO, III, RICO LOCASCIO, BRENT CALDERONE LONGO, MARK MANCINO, PAUL MEDAGLIA, CHRISTOPHER L. MIANO, VINCENT MINERVA, CHRISTOPHER MORMANDO, JAIME SCOTT MORRILL, JOEL NAZARENO, VITO PADULO, MICHAEL PERRINE, SCOTT PICCININNI, AKA SCOTT PALMER, AKA SCOOTER, FRANK J. PIZZOLATO, AKA FRANKIE THE FISH, THOMAS PLAMENCO, JOSEPH ROSETTI, KEITH RUFFLER, KIRK RUFFLER, MICHAEL SCARAMELLINO, JOSEPH SCARFONE, JR., RICHARD SCARSELLA, PAUL TAHAN, JEFFREY VAN BLARCOM, VICTOR VERNACI,

*Defendants*,

ROY AGELOFF,

*Defendant - Appellant*.

---

Before:

POOLER, WESLEY, LOHIER, *Circuit Judges*.

Appeal from the August 19, 2011 Memorandum and Order of Restitution from the United States District Court for the Eastern District of New York (Dearie, *J.*) resentencing Defendant-Appellant Roy Ageloff to pay $190 million in restitution to the victims of a massive fraud scheme perpetrated by Ageloff and his co-conspirators. Ageloff challenges this order on four grounds: (1) the district court erred by not holding an evidentiary hearing prior to resentencing; (2) the eight-year delay in resentencing violated Ageloff's constitutional and statutory rights; (3) the district court should have released some or all of the $536,000 of Ageloff's money held by the court from the time of his initial sentencing; and (4) Ageloff was entitled to CJA funding for expert services. Should we remand, Ageloff requests that the case be reassigned and CJA counsel relieved. We affirm and hold that the district court properly exercised its authority under the All Writs Act to restrain Ageloff's funds in anticipation of resentencing.

AFFIRMED.

---

SCOTT L. FENSTERMAKER, Law Office of Scott L. Fenstermaker, P.C., New York, NY, *for Defendant-Appellant*.

DANIEL A. SPECTOR, Assistant United States Attorney (David C. James, Assistant United States Attorney, *on the brief*), *for* Loretta E.

Lynch, United States Attorney for the Eastern District of New York, New York, NY, *for Appellee*.

---

PER CURIAM:

Defendant-Appellant Roy Ageloff appeals from the August 19, 2011 Memorandum and Order of Restitution by the United States District Court for the Eastern District of New York (Dearie, *J.*) resentencing Ageloff to pay $190,339,436.65 in restitution to the victims of a massive fraud scheme he and his co-conspirators designed and executed. Ageloff contends, *inter alia*, that the district court should have released some or all of the $536,000 of Ageloff's money held by the court pending his resentencing. Whether a district court may exercise its authority under the All Writs Act to restrain a convicted defendant's funds in anticipation of sentencing is a question of first impression in this Circuit. We answer it in the affirmative and affirm the district court's restitution order.

**Background**

Ageloff and his partner, Robert Catoggio, were the leaders of a massive "pump-and-dump" securities fraud

scheme. From 1991 to 1998, Ageloff and Catoggio owned and controlled four brokerage firms through which they defrauded the firms' customers in connection with the purchase and sale of different "House Stocks." Ageloff and Catoggio acquired these securities cheaply and then sold their shares at a substantial profit after creating artificial market demand by offering incentives to brokers to aggressively market the House Stocks. After this scheme unraveled, Ageloff pled guilty to one count of racketeering and stipulated to a sentence enhancement of eighteen levels for fraud that amounted to losses exceeding $80 million.[1]

The district court sentenced Ageloff to 96 months' imprisonment, three years' supervised release and $80 million in restitution pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A. At the time of his initial sentencing, Ageloff deposited approximately $536,000 with the clerk of the court for the purpose of paying restitution. Ageloff subsequently appealed the

[1] At the time Ageloff pled guilty, $80 million was the highest possible loss bracket under the 1997 Federal Sentencing Guidelines Manual. *See* U.S.S.G. § 2F1.1(b)(1)(S); *United States v. Catoggio*, 326 F.3d 323, 325 (2d Cir. 2003). The highest possible loss bracket under the 2011 Federal Sentencing Guidelines Manual is $400 million. *See* U.S.S.G. § 2B1.1(b)(1)(P).

district court’s 2001 restitution order to this Court, arguing, among other things, that the district court could not order restitution without first identifying the victims and their losses. *See United States v. Catoggio*, 326 F.3d 323, 324 (2d Cir. 2003). We agreed and remanded to the district court for the limited purpose of resentencing in accordance with the MVRA. *Id.* at 330; 18 U.S.C. § 3664(f)(1)(A).

On remand, the government submitted a report prepared by the National Association of Securities Dealers (“NASD Report”) that synthesized trade-sheet data to identify and tabulate the estimated $190 million in losses suffered by more than 9,000 victims. Although armed with the NASD Report, eight years elapsed before the district court resentenced Ageloff. The delay is partly traceable to Ageloff’s 2008 Florida prosecution for conspiracy to commit money laundering in connection with the conviction at issue here, as well as to a stay issued while Ageloff’s petition for a writ of certiorari was pending before the Supreme Court. However, as the district court noted, the eight-year delay on remand is not solely attributable to Ageloff. Over the years, there were several changes of counsel on both sides. And, indeed, the district court recognized that

responsibility "ultimately lies, as it must, with the Court." *See United States v. Ageloff*, 809 F. Supp. 2d 89, 107 n.17 (E.D.N.Y. 2011).

In 2011, after reviewing Ageloff's objections to the NASD Report, the district court incorporated the loss information into its restitution order and sentenced Ageloff to pay just over $190 million. *Id.* at 97-98, 112. In its order, the court also affirmed its prior rejection of Ageloff's request to access some of his money held by the court. *Id.* at 106. On appeal, Ageloff argues that the district court improperly refused to release any of his funds and consequently denied him the right to secure counsel of his choice.

## Discussion[2]

The All Writs Act enables federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The broad power conferred by

[2] Whether 28 U.S.C. § 1651 authorizes post-conviction, pre-sentencing restraint of a defendant's property is a legal issue. We therefore engage in *de novo* review. *See, e.g., United States v. Razmilovic*, 419 F.3d 134, 136 (2d Cir. 2005).

the All Writs Act is aimed at achieving "'the rational ends of law.'" *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977) (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)). Thus, courts have significant flexibility in exercising their authority under the Act. *See id.* at 173.

Although this Court has never addressed whether the All Writs Act enables a court to restrain a convicted defendant's property in anticipation of ordering restitution, courts in this Circuit and beyond have uniformly answered this question in the affirmative. *See United States v. Hatfield*, No. 06-CR-0550, 2010 WL 4235815, at *1 (E.D.N.Y. Sept. 27, 2010); *United States v. Numisgroup Int'l Corp.*, 169 F. Supp. 2d 133, 138-39 (E.D.N.Y. 2001); *United States v. Ross*, No. 92-CR-1001, 1993 WL 427415, at *1 (S.D.N.Y. Oct. 15, 1993)*; see also United States v. Sullivan*, No. 5:09-CR-302-FL-1, 2010 WL 5437243, at *5-*7 (E.D.N.C. Nov. 17, 2010); *United States v. Simmons*, No. 07-CR-30, 2008 WL 336824, at *1 (E.D. Wis. Feb. 5, 2008); *United States v. Runnells*, 335 F. Supp. 2d 724, 725-26 (E.D. Va. 2004); *United States v. Abdelhadi*, 327 F. Supp. 2d 587, 598-601 (E.D. Va. 2004).

In reaching this conclusion, courts explain that a sentencing court may use the All Writs Act to prevent the defendant from frustrating collection of the restitution debt. For instance, in *Ross*, a district court for the Southern District of New York issued an order restraining the convicted defendant's assets pending sentencing pursuant to the All Writs Act. 1993 WL 427415, at *1. The restraining order furthered the court's exercise of its jurisdiction over sentencing by ensuring that the defendant would have some assets available to satisfy the pending restitution order. *See id.* at *1. Even though the exact amount of restitution to be ordered was unclear, the district court determined that there was "a real question as to whether or not [the defendant] currently has sufficient liquid assets to satisfy *any* judgment of restitution ordered by the Court," and it therefore "seem[ed] totally appropriate to restrain [the defendant] from dissipating his assets prior" to sentencing. *Id.* (emphasis added).

Relying on *Ross*, the Eastern District of New York used the All Writs Act to restrain the defendants' 26,600 coins (valued somewhere between $430,000 and $860,000) in anticipation of sentencing. *Numisgroup Int'l Corp.*, 169 F. Supp. 2d at 136-38. The court reasoned that "'[t]here is no

logic to the position that the Court is powerless to enter a restraining order after a jury has found a defendant guilty of participating in a large-scale fraud simply because sentencing has been delayed.'" *Id.* at 138 (quoting *Ross*, 1993 WL 427415, at *1). In explaining its order, the court also expressed concern over one defendant's lack of assets available to satisfy the court's future order of restitution. *See id.* at 138.

Similarly, in *Sullivan*, the Eastern District of North Carolina determined that a restraining order was warranted pursuant to the All Writs Act because the defendant, who had previously pled guilty to eleven counts of manufacturing child pornography and one count of possession of child pornography, was attempting to dispose of his assets prior to sentencing and a probable order of restitution. 2010 WL 5437243, at *1, *7. The court explained that it would be "'without any meaningful ability to impose a proper sentence'" if it could not issue an order stopping a convicted defendant awaiting sentencing from disposing of assets in an effort to avoid paying restitution or other fines and court costs. *Id.* at *6 (quoting *United States v. Gates*, 777 F. Supp. 1294, 1296 n.7 (E.D. Va. 1991)).

The Eighth Circuit recently issued a set of decisions that strongly suggest it takes a similar position regarding a sentencing court's ability to restrain a defendant's funds pursuant to the All Writs Act. *See United States v. Yielding*, 657 F.3d 688 (8th Cir. 2011) ("*Yielding I*"); *see also United States v. Yielding*, 657 F.3d 722 (8th Cir. 2011) ("*Yielding II*"). In *Yielding I,* the Eighth Circuit vacated and remanded the district court's approximately $1 million restitution order after finding that the court below erred in presuming that restitution was mandatory. *See* 657 F.3d at 718-19. In *Yielding II*, decided on the same day, the court affirmed the district court's issuance of a TRO to prevent the defendant from spending or transferring any of the $160,000 he was likely to receive as a settlement in an unrelated civil case. 657 F.3d at 727-28. The Eighth Circuit confirmed the district court's authority to issue the TRO pursuant to the All Writs Act because the restraining order was appropriate in aid of the court's exercise of jurisdiction to ensure that the defendant's assets were available for paying restitution. *See id.* at 726-28. "We agree that a sentencing court has jurisdiction to enforce its restitution order and may use the All Writs Act, when necessary and appropriate, to prevent the

restitution debtor from frustrating collection of the restitution debt." *Id.* at 727. Because the Eighth Circuit vacated the restitution order itself on the same day it affirmed the TRO, the court effectively held that the All Writs Act gave the district court the power to issue a restraining order for the purpose of ensuring that sufficient funds would be available to satisfy any future order of restitution.

Aided by the relevant case law, we conclude that the district court properly exercised its authority under the All Writs Act to restrain Ageloff's assets in anticipation of resentencing.[3] Ageloff pled guilty to committing a crime for which restitution is mandatory under the MVRA. *See* 18 U.S.C. § 3663A(c)(1)(A)(ii). Given that Ageloff agreed to a sentencing enhancement for fraud causing losses of $80 million or more, the eventual restitution order was certain to exceed $536,000. *See Catoggio*, 326 F.3d at 329. Although we believe that this circumstance alone would be sufficient to justify the district court's exercise of its

[3] That the district court did not cite to the All Writs Act in reaching its decision is of no consequence; we are free to affirm on any legal basis for which there is sufficient support in the record. *See, e.g.*, *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987).

power under the All Writs Act, other facts highlight the need to ensure compliance with the district court's anticipated order of restitution: specifically, Ageloff's 2008 conviction for conspiring to launder millions of dollars in proceeds from this fraud scheme.

Moreover, Ageloff's argument that the district court's refusal to release any of his money denied him the right to counsel of his choice in violation of the Sixth Amendment is without merit. In *United States v. Monsanto*, the Supreme Court held that a pretrial restraining order freezing the defendant's assets did "not 'arbitrarily' interfere with a defendant's 'fair opportunity' to retain counsel." 491 U.S. 600, 616 (1989) (quoting *Powell v. Alabama*, 287 U.S. 45, 69, 53 (1932)). This reasoning applies with "even greater force" here because Ageloff had already pled guilty to both the underlying fraud scheme and later to attempting to launder its proceeds from his prison cell. *See Numisgroup Int'l Corp.*, 169 F. Supp. 2d at 139. In any event, Ageloff was ably represented by CJA counsel at the time of resentencing and for purposes of this appeal.

Ageloff's remaining arguments on appeal are without merit. For example, contrary to Ageloff's assertions, the district court was not required to hold an evidentiary

hearing prior to resentencing provided that Ageloff was afforded sufficient opportunity to be heard. *See United States v. Slevin*, 106 F.3d 1086, 1091 (2d Cir. 1996). He was. Finally, Ageloff cannot make out any constitutional or statutory claim based on the eight-year delay in resentencing because he did not suffer prejudice. *Cf. United States v. Ray*, 578 F.3d 184, 202 (2d Cir. 2009).

## Conclusion

For the foregoing reasons, the order of the district court is hereby **AFFIRMED**.